# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO & COMPANY, <br><br> Defendant. | Case No. 4:18-cv-00501-ALM-KPJ <br><br> **JURY TRIAL DEMANDED** |

## <u>DEFENDANT WELLS FARGO & COMPANY'S MOTION TO STAY</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND .....................................................................................................2

III.   THIS CUSTOMER SUIT AGAINST WELLS FARGO SHOULD BE STAYED PENDING FINAL RESOLUTION OF THE MANUFACTURER CASES......................5

     A.    Legal Standard:  The Customer Suit Doctrine ..........................................5

     B.    The Customer Suit Doctrine Warrants a Stay of This Case ....................8

     C.    Additional Factors Weigh in Favor of a Stay..........................................11

IV.   CONCLUSION....................................................................................................13

# <u>TABLE OF AUTHORITIES</u>

<u>Pages(s)</u>

**Cases**

*Belfer Cosmetics, LLC v. Nordstrom, Inc.*,
    No. H-15-683, 2016 WL 8792318 (S.D. Tex. Feb. 26, 2016) ...................................................7

*Capital Sec. Sys., Inc. v. NCR Corp.*,
    No. 1:14-cv-1516-WSD et al., 2015 WL 3819336 (N.D. Ga. June 18, 2015) .........................7

*Cellular Commc'ns Equipment LLC v. Apple, Inc.*,
    No. 6:14-cv-251-KNM, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016) ....................6, 7, 8, 10

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*,
    No. 1:14-cv-356-LY, 2015 WL 10818739 (W.D. Tex. Aug. 21, 2015)............................7, 10

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006) ................................................................................................12

*Kahn v. Gen. Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989) ................................................................................................5

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................................6, 10, 11

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ..................................................................................................................5

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
    No. 17-cv-9175, 2018 WL 3059604 (N.D. Ill. June 20, 2018)..................................................6

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014)...................................................................1, 2, 5, 6, 10, 12

*Opticurrent, LLC v. Power Integrations, Inc.*,
    No. 2:16-cv-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) .................................7, 9

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
    No. 2:16-cv-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017)...........1, 6, 7, 9, 10, 11, 12

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
    657 F.3d 1349 (Fed. Cir. 2011)...........................................................................................5, 6

*T.J. Smith & Nephew Ltd. v. Ferris Corp.*,
    No. 86- C 5461, 1987 WL 7496 (N.D. Ill. Feb. 27, 1987) ......................................................12

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Telebrands Corp. v. Nat'l Exp., Inc.*,
    No. 12-cv-6671 et al., 2014 WL 4930897 (D.N.J. Oct. 2, 2014) .......................................7, 10

*Terrell v. DeConna*,
    877 F.2d 1267 (5th Cir. 1989) .............................................................................................11

*Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*,
    No. 0:16-cv-60693-UU, 2016 WL 6678525 (S.D. Fla. June 8, 2016)......................................6

*Tile Tech, Inc. v. Appian Way Sales, Inc.*,
    No. C17-1660JLR, 2018 WL 2113958 (W.D. Wash. May 8, 2018)........................................7

*UltimatePointer, L.L.C. v. Nintendo Co.*,
    No. 6:11-cv-496-LED et al., 2014 WL 12515338 (E.D. Tex. June 17, 2014) ..................9, 11

*WP Banquet, LLC v. Target Corp.*,
    No. 16-cv-02082-JAK(JPRx), 2016 WL 9450448 (C.D. Cal. Dec. 15, 2016)........................7

## I.     INTRODUCTION

Wapp Tech Limited Partnership and Wapp Tech Corp. (collectively, "Wapp") allege that "[c]ertain Micro Focus software products that are used by [Wells Fargo & Company ("Wells Fargo")] infringe the Patents-in-Suit."[1]  Dkt. No. 1 ¶ 15.  Wapp has not limited its lawsuit to Wells Fargo, but also sued Bank of America and Hewlett Packard Enterprise Company ("Hewlett Packard Enterprise") in this Court, alleging infringement of the same patents based on the same products and functionalities.  More significant, however, Wapp filed yet another suit in this Court against the alleged manufacturer of the "Micro Focus software products," Micro Focus International plc.  In that suit against Micro Focus International plc, Wapp asserts infringement of the same patents, by the same accused products and functionalities, using the same theories of infringement, as it does in this suit against Wells Fargo.  In fact, demonstrative of the uniformity of its allegations, Wapp attached identical "infringement" charts to its complaints against Wells Fargo and Micro Focus International plc, as well as Bank of America and Hewlett Packard Enterprise. That Wapp's complaints against the alleged manufacturer of the accused software and that manufacturer's customers are essentially indistinguishable, strongly supports the relief requested herein by Wells Fargo:  stay this (and the other) suits while Wapp litigates its claims against the manufacturer.

"[T]o facilitate just, convenient, efficient, and less expensive determination[s]" in circumstances such as this, "courts have developed a practice of" applying the "customer suit doctrine" to "stay[] claims against customers pending resolution of the suit against the manufacturer" where the actions involve at least the same "major" issues, such as infringement and invalidity.  *In re*

---

[1]     Wells Fargo & Company is a holding company that provides no products or services in this District, unlike its wholly owned subsidiary, Wells Fargo Bank, N.A.

*Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *2 (E.D. Tex. July 12, 2017). Resolution of such issues in an action against the manufacturer—the "'true defendant' in the dispute"—will also resolve those same issues in the customer suit. *Nintendo*, 756 F.3d at 1366. That is the situation here, and thus any final judgment as to infringement and invalidity in the manufacturer suits will resolve the same issues as to Wells Fargo. And any damages award that Wapp could obtain against the manufacturer would preclude a double recovery against Wells Fargo.

While Micro Focus International plc has filed a motion to dismiss the case against it for lack of personal jurisdiction and failed service of process, Wapp will have a party against whom it can seek redress for the infringement alleged. Indeed, the two subsidiaries of Micro Focus International plc that actually market and license the accused software, Seattle SpinCo, Inc. ("Seattle SpinCo") and EntIT Software LLC ("EntIT Software"), recently brought an action for declaratory judgment against Wapp for non-infringement and invalidity of the same Wapp patents in view of the same products and functionalities. Accordingly, Seattle SpinCo and EntIT Software are the proper defendants, not Micro Focus International plc. Nevertheless, regardless of which of these two suits goes forward, at least one manufacturer suit involving the same allegations as in this suit against Wells Fargo will survive.

Additionally, in the event of a stay, Wells Fargo agrees to be bound by any final judgment in the appropriate manufacturer suit. Thus, the customer suit doctrine warrants a stay of this case pending final resolution of the manufacturer litigation.

## II.    BACKGROUND

**<u>The Manufacturer Actions</u>.** On July 2, 2018, Wapp filed a complaint in this Court against Micro Focus International plc. In that complaint, Wapp alleges that Micro Focus International plc directly infringed U.S. Patent Nos. 9,971,678, 9,298,864, and 8,924,192 (the "Patents-in-Suit") by

making, using, offering to sell, and/or selling the following software products and functionalities: specifically, in its complaint against Micro Focus International plc, Wapp alleges that Micro Focus International plc "has directly infringed at least Claim 1 of the [asserted patents], including making, using (including for testing purposes), selling, and offering for sale . . . including and not limited to the LoadRunner, Performance Center, StormRunner and Mobile Center software products ('Micro Focus Software Suite')." *Wapp Tech Ltd. v. Micro Focus Int'l plc*, No. 4:18-cv-00469-ALM (E.D. Tex. filed July 2, 2018), Dkt. No. 1, ¶¶ 59, 76 and 95. Attached to Wapp's complaint against Micro Focus International plc are several claim charts purporting to support Wapp's allegations of infringement for certain claims of each Patent-in-Suit, on an element-by-element basis. *See id.*, Dkt. No. 1, Exs. 4–6. Today, on October 17, 2018, Micro Focus International plc moved to dismiss Wapp's complaint against it on various grounds, including that Micro Focus International plc does not make the accused software, is not subject to personal jurisdiction in the state of Texas, and has not been served. *Id.*, Dkt. No. 12. Micro Focus International plc's motion to dismiss remains pending.

Meanwhile, also on October 15, 2018, Seattle SpinCo and EntIT Software, which claim to be indirect wholly owned subsidiaries of Micro Focus International plc, jointly filed a declaratory judgment action against Wapp in the District of Delaware. *Seattle SpinCo, Inc. v. Wapp Tech Ltd. P'ship*, No. 1:18-cv-01585-UNA, Dkt. No. 1 ¶ 4 (D. Del.). In that action, Seattle SpinCo and EntIT Software assert that they make and sell the accused software, and they seek a declaratory judgment of non-infringement and invalidity with respect to the same Patents-in-Suit asserted against Micro Focus International plc. *Id.* ¶¶ 21–26.

**The Wells Fargo Action.**[2]  On July 16, 2018, Wapp filed its Complaint in this action against Wells Fargo.  Dkt. No. 1.  In its Complaint in this case, Wapp alleges that Wells Fargo "has been making and/or using (including for testing purposes) and continues to make and/or use (including for testing purposes) . . . including and not limited to the Micro Focus Software Suite and LoadRunner."  *Id.* ¶ 26.  As with Wapp's allegations against Micro Focus International plc, Wapp alleges only direct infringement of the Patents-in-Suit against Wells Fargo.  Dkt. No. 1 ¶¶ 58, 76, 96.  Likewise, the substance of Wapp's allegations of infringement against Wells Fargo are identical to those against Micro Focus International plc.  *Compare* Dkt. No. 1 ¶¶ 35–109, *with* No. 4:18-cv-00469-ALM, Dkt. No. 1 ¶¶ 30–107.  In particular, Wapp attaches the same alleged infringement charts to its Complaint against Wells Fargo as it did to its complaint against Micro Focus International plc.  *Compare* Dkt. Nos. 1-4, 1-5, and 1-6, *with* No. 4:18-cv-00469-ALM, Dkt. Nos. 1-4, 1-5, and 1-6.  And the charts are directed solely to the accused products and functionalities allegedly made and sold by Micro Focus International plc.  Wapp makes no other claims against Wells Fargo in this case.

Despite Wapp's allegations, Wells Fargo, which is a holding company, does not actually use the accused software.  But to the extent any subsidiary of Wells Fargo does use any of the accused software, such subsidiary is merely a customer that uses the software "off the shelf."  Ex. A ¶ 5; *see also* Dkt. No. 1 ¶¶ 24, 28, 30.  More specifically, to the extent a subsidiary of Wells Fargo uses the accused products and functionalities, they are used for their intended purpose.  Ex. A ¶ 5.  Neither Wells Fargo, nor any subsidiary, has ever had a role in designing, developing,

---

[2]  As noted, Wapp also filed cases against Bank of America, *Wapp Tech Ltd. v. Bank of America Corp.*, No. 4:18-cv-00519-ALM (E.D. Tex. filed July 20, 2018) and Hewlett Packard Enterprise, *Wapp Tech Ltd. v. Hewlett Packard Enterprise Co.*, No. 4:18-cv-00468-ALM (E.D. Tex. filed July 2, 2018).  Both Bank of America and Hewlett Packard Enterprise have filed motions to stay in their respective cases.

producing, or maintaining any of the accused software. *Id.* ¶ 4. Neither Wells Fargo, nor any subsidiary, modifies the accused software in any way. *Id.* ¶ 5. Indeed, Wells Fargo is not aware of any way to modify the code in the accused software; neither would such modifications be permitted to be made even if it were possible to do so. *Id.*

Wells Fargo filed an answer to Wapp's Complaint on October 16, 2018. Dkt. No. 8. In its answer, Wells Fargo denies Wapp's allegations of infringement of the Patents-in-Suit. Wells Fargo also asserts several affirmative defenses, including that the asserted claims of the Patents-in-Suit are invalid. *Id.* ¶¶ 110–24.

## III. THIS CUSTOMER SUIT AGAINST WELLS FARGO SHOULD BE STAYED PENDING FINAL RESOLUTION OF THE MANUFACTURER CASES

### A. Legal Standard: The Customer Suit Doctrine

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

As such, where the customer of a product has been sued for alleged patent infringement based on the customer's use of the product, courts have applied the "customer suit doctrine" to stay the litigation against the customer so that a co-pending action based on similar claims against the product's manufacturer can first proceed to conclusion. *See, e.g.*, *Nintendo*, 756 F.3d at 1365. The Federal Circuit has explained that this doctrine "is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement . . . and to guard against possibility of abuse," and is intended "to facilitate just, convenient, efficient, and less expensive determination[s]." *See id.* at 1365; *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011) (quoting *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989)).

Accordingly, where the customer and manufacturer suits share the same "major issues," such as infringement and invalidity, and thus resolution of those issues in the manufacturer suit will resolve the same issues in the customer suit, the doctrine "exists to avoid . . . imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *See Nintendo*, 756 F.3d at 1366; *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). This is true even if there "may be additional issues involving the defendant[] in [the customer suit]," as the customer suit nevertheless "will be advanced if [the plaintiff] is successful on the major premises being litigated in [the manufacturer litigation], and may well be mooted if [the plaintiff] is unsuccessful." *Nintendo*, 756 F.3d at 1366 (quoting *Katz*, 909 F.2d at 1464) (internal quotation marks omitted); *Spread Spectrum*, 657 F.3d at 1358.

In *Nintendo*, the Federal Circuit directed a district court to stay infringement suits against eleven customer defendants, finding that the "case against [the manufacturer] must proceed first, in any forum." 756 F.3d at 1366. The court reasoned that "the issues of infringement and validity [we]re common" to the manufacturer and the customer suits, and "that if [the plaintiff] were to collect royalties from [the manufacturer], this would preclude suit against the [customers]." *Id.* Thus, the court held that "[s]ince [the manufacturer's] liability is predicate to recovery from any of the defendants, the case against [the manufacturer] must proceed first." *Id.*

After *Nintendo*, a court in this District has recognized that "courts have developed a practice of . . . staying claims against customers pending resolution of the suit against the manufacturer." *Saint Lawrence*, 2017 WL 3712912, at *2 (citing *Cellular Commc'ns Equipment LLC v. Apple, Inc.*, No. 6:14-cv-251-KNM, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016)); *see also Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 17-cv-9175, 2018 WL 3059604, at *3 (N.D. Ill. June 20, 2018) ("District courts . . . have routinely applied this [customer suit] doctrine to stay patent

infringement claims against customers in favor of resolving the patentee's claims against the up-stream manufacturer first."); *Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 WL 6678525, at *4 (S.D. Fla. June 8, 2016) ("Courts often stay patent litigation brought against resellers of allegedly infringing products under the customer suit doctrine pending resolution of claims against the product's manufacturer."). Specifically, courts in this District and others have applied this doctrine to stay a customer suit where, as in this case, there are co-pending claims of infringement against the manufacturer based on the same patents and products.[3]

In *Saint Lawrence*, for example, a court in this District stayed a customer suit in favor of a manufacturer suit based on the same products and patents, where "the infringement contentions . . . served on" the manufacturer and customers "were identical." 2017 WL 3712912, at *1. The court held that the claims against the customer defendants were "peripheral" to those against the manu-facturer, noting that the customer defendants "play[ed] no role in the development, design, or im-plementation of the relevant software code." *Id.* at *2. The court further relied on the fact that the customer defendants had "agree[d] to be bound by the invalidity and infringement rulings in [the manufacturer] case." *Id.* The court held that "infringement and invalidity—two of the biggest issues in any patent case—[would therefore] be resolved by the first trial against" the manufac-turer. *Id.*; *see also Collaborative Agreements*, 2015 WL 10818739, at *2 (staying a customer suit

---

[3] *See, e.g., Saint Lawrence*, 2017 WL 3712912, at *1–2; *Opticurrent, LLC v. Power Inte-grations, Inc.*, No. 2:16-cv-325-JRG, 2016 WL 9275395, at *4–5 (E.D. Tex. Oct. 19, 2016); *Cel-lular Commc'ns*, 2016 WL 6884648, at *1; *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 1:14-cv-356-LY, 2015 WL 10818739, at *1–3 (W.D. Tex. Aug. 21, 2015); *Belfer Cosmetics, LLC v. Nordstrom, Inc.*, No. H-15-683, 2016 WL 8792318, at *1–3 (S.D. Tex. Feb. 26, 2016); *Tile Tech, Inc. v. Appian Way Sales, Inc.*, No. C17-1660JLR, 2018 WL 2113958, at *1–3 (W.D. Wash. May 8, 2018); *WP Banquet, LLC v. Target Corp.*, No. 16-cv-02082-JAK(JPRx), 2016 WL 9450448, at *1, 5–6 (C.D. Cal. Dec. 15, 2016); *Capital Sec. Sys., Inc. v. NCR Corp.*, No. 1:14-cv-1516-WSD et al., 2015 WL 3819336, at *1–3 (N.D. Ga. June 18, 2015).

where the customer defendants agreed to "be bound by any infringement rulings against [the man-ufacturer]"); *cf. Telebrands Corp. v. Nat'l Exp., Inc.*, No. 12-cv-6671 et al., 2014 WL 4930897, at *4–5 (D.N.J. Oct. 2, 2014) (staying a customer suit *even though* the customer defendants had *not* "agreed to be bound by the judgments in the manufacturer cases").

In *Cellular Communications*, another court in this District stayed a customer suit in favor of a similar manufacturer suit.  As in *Saint Lawrence*, the district court in *Cellular Communications* based its decision in part on the fact that the plaintiff had "drafted a single set of identical infringe-ment contentions for" the manufacturer and the customer defendants, and thus the "infringement claims" against the customers were "substantively identical to the infringement claims against" the manufacturer.  2016 WL 6884648, at *2.  The court rejected the plaintiff's argument that the customers were required to "configure" the accused phones and tablets "in a way that [was] com-patible with their network" and that the customers "t[ook] the extra step of bundling" the accused software "with service plans and imposing standards which must be maintained in order to use the device."  *Id.*  The court reasoned that any such differences did not change the identical "infringe-ment allegations" against the customer and manufacturer defendants, as the differences "d[id] not change the fact that" the customers "d[id] not modify or alter the patented technology at issue."  *Id.*

## B.      The Customer Suit Doctrine Warrants a Stay of This Case

Under the customer suit doctrine, this lawsuit should be stayed pending the final outcome of the current litigation against the manufacturer of the accused software.  While there are two pending suits involving the alleged manufacturer of the accused software—*i.e.*, the case brought by Wapp against Micro Focus International plc in this Court and the declaratory judgment action brought by Seattle SpinCo and EntIT Software against Wapp in Delaware—there can be no dispute among the parties to those cases that only one of the cases should move forward on the merits; the

parties may only disagree as to which of the two cases should be the one to proceed.  Regardless of which case ends up moving forward, that case will be the operative manufacturer suit.  And this action against Wells Fargo should be stayed in view of that operative manufacturer suit.

In particular, a stay of this case, as well as those against Bank of America and Hewlett Packard Enterprise, should be granted under the customer suit doctrine because these cases and the manufacturer suit involve the same Patents-in-Suit, the same accused products and functionalities, and the same allegations of infringement.  Thus, any final judgment in the manufacturer litigation will resolve at least the "major issues" of infringement and invalidity in this case.  Accordingly, a stay of this customer suit against Wells Fargo will best "facilitate [a] just, convenient, efficient, and less expensive determination" and "avoid" unnecessarily "imposing the burdens of" litigation on Wells Fargo.  *See Nintendo*, 756 F.3d at 1365–66.  Likewise, a stay of all of the other non-manufacturer cases, *i.e.,* those against Bank of America and Hewlett Packard Enterprise, will provide enhanced efficiencies and decrease the burdens on the courts.

First, the accused products and functionalities are the same in this case as in the manufacturer suits.  As a customer, Wells Fargo is at most a mere user of the accused software.  As with the customer defendant in *Saint Lawrence*, Wells Fargo "play[s] no role in the development, design, or implementation of the relevant software code" or any other aspect of the accused software.  *See* 2017 WL 3712912, at *2; Ex. A ¶ 4; *see also Opticurrent*, 2016 WL 9275395, at *5 (granting a stay of the customer suit where the customer was "merely a 'distributor or reseller of the accused products'").  To the extent Wells Fargo, or any subsidiary, uses any of the accused software, such use is "off the shelf," meaning that no modifications are made to the software.  Ex. A ¶ 5.  In fact, Wells Fargo is not aware of any modifications that it could make to the accused software, nor would any such modifications be permitted even if it were possible to make them.  *Id.*  Thus, to

the extent there is such use, the products and functionalities are used for their intended purpose. *Id.*

Second, this case and the manufacturer suits involve the same Patents-in-Suit and infringement allegations. Moreover, just as the plaintiffs did in *Saint Lawrence* and *Cellular Communications*, Wapp attached *identical* infringement charts to its complaints against Wells Fargo and Micro Focus International plc, and the charts are directed solely to the accused products and functionalities allegedly made and sold by Micro Focus International plc. *Compare* Dkt. No. 1, Exs. 4–6, *with* No. 4:18-cv-00469-ALM, Dkt. No. 1, Exs. 4–6; *Saint Lawrence*, 2017 WL 3712912, at *1; *Cellular Communications*, 2016 WL 6884648, at *2. Wapp alleges only direct infringement against each defendant, and has not raised any separate claims unique to either defendant. Dkt. No. 1 ¶¶ 58, 76, 96; No. 4:18-cv-00469-ALM, Dkt. No. 1 ¶¶ 59, 76, 95. Because the basis for alleged infringement is the same for Wells Fargo as for the product manufacturer, the outcome of Wapp's infringement claims against the manufacturer will dispose of the infringement question as to Wells Fargo here.

Third, although a customer defendant's agreement "to be bound by the judgments in the manufacturer cases" is "not require[d]" for a stay under the customer suit doctrine, in the event of a stay, Wells Fargo hereby agrees to be bound by any final judgment of liability in the manufacturer litigation, including as to infringement and invalidity. *See Telebrands*, 2014 WL 4930897, at *4; *see also Katz*, 909 F.2d at 1464. Like the customer defendants' agreements to be bound in *Collaborative Agreements* and *Saint Lawrence*, Wells Fargo's agreement to be bound only further "reinforce[s]" that Wapp's claims against Wells Fargo are "peripheral to the central infringement dispute" against the alleged manufacturer of the accused software. *See Collaborative Agreements*, 2015 WL 10818739, at *2; *Saint Lawrence*, 2017 WL 3712912, at *2.

10

Fourth, any payment of a royalty by the manufacturer of the accused software—whether from a settlement or an adverse judgment in one of the pending cases—will exhaust Wapp's claims against Wells Fargo. *Nintendo*, 756 F.3d at 1366. That also would render this lawsuit moot, since Wells Fargo would not owe any damages for infringement. *Id.*

Thus, because this case and the manufacturer suits share at least the same infringement and invalidity questions—"two of the biggest issues in any patent case"—and particularly because Wells Fargo agrees to be bound by any final judgment of liability in the manufacturer litigation in the event of a stay, allowing the manufacturer suit to proceed first will resolve those same issues in this case and potentially moot others. *Saint Lawrence*, 2017 WL 3712912, at *2. Indeed, issue preclusion also will bar Wapp from relitigating against Wells Fargo any issues on which Wapp loses in the manufacturer litigation. *Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989). Here, the manufacturer (whether Seattle SpinCo and EntIT Software, or Micro Focus International plc) is the "'true defendant' in the dispute" with a significant interest in proceeding first in this litigation, not only to "protect [its alleged] customers" "as a matter of contract" and "good business," but also "to avoid the damaging impact of an adverse ruling against [its products]." *Katz*, 909 F.2d at 1464 (citation omitted). The instant action against Wells Fargo, which is merely "peripheral" to that dispute, therefore should be stayed pending final resolution of the manufacturer litigation.

### C. Additional Factors Weigh in Favor of a Stay

Although this litigation can and should be stayed based on the customer suit doctrine alone, the following three factors further weigh in favor of a stay:

(1) This case is in its infancy, where Wells Fargo filed its answer to the complaint just yesterday, discovery has not begun, and no trial date has been set;

(2) As discussed above, a stay of this case "will simplify the issues in question and trial of

the case," based on resolution of at least the same "major" issues in the manufacturer litigation and Wells Fargo's agreement to be bound in the event of a stay by any final judgment as to such issues (*supra*, Section III(B)); and

(3) Wapp will suffer no "prejudice" or "clear tactical disadvantage" from a stay. *UltimatePointer, L.L.C. v. Nintendo Co.*, No. 6:11-cv-496-LED et al., 2014 WL 12515338, at *9 (E.D. Tex. June 17, 2014) (citation and internal quotation marks omitted).

As to the third factor, Wapp will suffer no prejudice from a stay of this case because Wapp will still be able to proceed with the manufacturer litigation which, as demonstrated by Wapp's identical infringement charts as to Wells Fargo and Micro Focus International plc, involves the same infringement allegations as in this case. And it is the alleged manufacturers—not Wells Fargo, a mere customer—that would be the primary source of relevant information. *See T.J. Smith & Nephew Ltd. v. Ferris Corp.*, No. 86- C 5461, 1987 WL 7496, at *2 (N.D. Ill. Feb. 27, 1987) ("The manufacturer is clearly in the best position to either defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent," and "[presumably]" "has the more detailed knowledge regarding the claim of infringement, the expertise in the area, and the primary interest in the outcome of the litigation.") (citation and internal quotation marks omitted). Furthermore, it has been well established that a "party is precluded from suing to collect damages for direct infringement by a buyer and user of a product when actual damages covering that very use have already been collected from the maker and seller of that product." *Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 864 (Fed. Cir. 2006); *Nintendo*, 756 F.3d at 1366. Consequently, as discussed above, if the claims of the Patents-in-Suit are found to be not invalid and infringed in the manufacturer litigation, Wapp's award of any damages against the manufacturers would preclude any "double recovery" against Wells Fargo. *Saint Lawrence*, 2017 WL 3712912, at *2.

Accordingly, these three factors only further weigh in favor of staying this case against Wells Fargo.

## IV. CONCLUSION

Based on the foregoing, Wells Fargo respectfully requests that the Court grant this motion and stay this action pending final resolution of the manufacturer litigation involving Seattle SpinCo and EntIT Software or Micro Focus International plc, whichever is the suit to go forward.

Dated: October 17, 2018                     Respectfully submitted,

                                    By:   */s/ Mark N. Reiter*
                                          _____
                                          Mark Reiter
                                          Lead Counsel
                                          State Bar No. 16759900
                                          mreiter@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          2100 McKinney Avenue, Suite 1100
                                          Dallas, Texas 75201-6912
                                          Telephone: 214.698.3360
                                          Facsimile: 214.571.2907

                                          Neema Jalali
                                          California State Bar No. 245424
                                          njalali@gibsondunn.com
                                          GIBSON, DUNN & CRUTCHER LLP
                                          555 Mission Street
                                          San Francisco, CA 94105-0921
                                          Tel: 415.393.8224
                                          Fax: 415.374-8436

                                          *Attorneys for Wells Fargo & Company*

## CERTIFICATE OF CONFERENCE

Counsel for the parties conferred by telephone on October 15, 2018. I attended on behalf of Wells Fargo, and Jeffrey Toler attended on behalf of Wapp. Counsel discussed the issues related to this motion, and Mr. Reiter referred Mr. Toler to the case law supporting that the instant action should be stayed in view of the manufacturer cases. Despite that case law, Mr. Toler disagreed that this action should be stayed. These discussions have ended in an impasse, which leaves the stay issue open for the Court to resolve.

*/s/ Mark N. Reiter*
Mark N. Reiter

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Mark N. Reiter*
Mark N. Reiter

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

WAPP TECH LIMITED PARTNERSHIP
and WAPP TECH CORP.,

          Plaintiffs,

    v.

WELLS FARGO & COMPANY,

          Defendant.

Case No. 4:18-cv-00501-ALM-KPJ

**JURY TRIAL DEMANDED**

## <u>DECLARATION OF ALLEN VAN DER POEL</u>

I, Allen Van der Poel, hereby declare as follows:

1.      I am an employee of Wells Fargo Bank, N.A., which is a wholly-owned subsidiary of Wells Fargo & Company.  I understand that Wells Fargo & Company is a holding company, not an operating company.  I have been an employee of Wells Fargo Bank, N.A. since 2008, when Wells Fargo merged with my former employer, Wachovia.  The facts set forth herein are true and correct, and are based on my own personal knowledge.  If called upon to testify as a witness, I could and would competently testify thereto.

2.      My title at Wells Fargo Bank, N.A. is Technology Manager, which is a position I have held since 2008.  As part of my responsibilities as Technology Manager, I manage all licenses and agreements with vendors relating to what Wells Fargo Bank, N.A. refers to as "quality assurance tools," which are software tools that employees of Wells Fargo Bank, N.A. use internally to help ensure that certain of Wells Fargo Bank, N.A.'s technology infrastructure operates effectively.

3.      I understand that the plaintiffs in this lawsuit have identified the following alleged products and functionalities:  "HP StormRunner Load"; "HP Mobile Center"; "LoadRunner"; "HP LoadRunner, HP Performance Center, Shunra Network Virtualization, HP Network Virtualization engine, HP Network Virtualization for Mobile, HP Network Capture, and/or any Micro Focus products related to any of the foregoing"; "Micro Focus TruClient Native Mobile"; and "Micro Focus Mobile Center."

4.      To the extent Wells Fargo Bank, N.A. understands what the software products and functionalities referenced above in Paragraph 3 are, Wells Fargo Bank, N.A. does not manufacture, import, sell, or offer to sell any such software, and has never done so.  Nor has Wells Fargo Bank, N.A. ever had any role in designing, developing, producing, or maintaining any such software.

Rather, to the extent Wells Fargo Bank, N.A. has used any such software, Wells Fargo Bank, N.A. is merely a customer of the software.

5. To the extent Wells Fargo Bank, N.A. has used such software products and functionalities, Wells Fargo Bank, N.A. uses them consistent with their general purpose. Such use has only been "off the shelf." That is, Wells Fargo Bank, N.A. does not modify the software in any way. Further, I am not aware of any way in which Wells Fargo Bank, N.A. could modify the code in the software, nor would Wells Fargo Bank, N.A. permit such modifications to be made even if it were possible to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October _17_, 2018.

Allen Van der Poel

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., | Case No. 4:18-cv-00501-ALM-KPJ |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| WELLS FARGO & COMPANY, | |
| Defendant. | |

## [PROPOSED] ORDER GRANTING
## DEFENDANT WELLS FARGO & COMPANY'S MOTION TO STAY

Before the Court is Defendant Wells Fargo & Company's Motion to Stay.  Having considered the relevant authorities, the parties' briefing, and oral argument in support of and in opposition to the Motion, the Court orders that Wells Fargo & Company's Motion to Stay is hereby **GRANTED**.  This action is stayed pending final resolution of the manufacturer litigation involving Seattle SpinCo, Inc. and EntIT Software LLC (*Seattle SpinCo, Inc. v. Wapp Tech Ltd. P'ship*, No. 1:18-cv-01585-UNA (D. Del.)) or Micro Focus International plc (No. 4:18-cv-00469-ALM (E.D. Tex.)), whichever is the suit to go forward.

**IT IS SO ORDERED.**