# EXHIBIT 10

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF TEXAS
 2                         SHERMAN DIVISION

 3     WAPP TECH LIMITED PARTNERSHIP   | DOCKET 4:18CV469
       AND WAPP TECH CORP.             |
 4                                     | MARCH 1, 2021
       VS.                             |
 5                                     | 10:01 A.M.
                                       |
 6     SEATTLE SPINCO, INC., ET AL     | SHERMAN, TEXAS

 7     ------------------------------------------------------------

 8          VOLUME 1 MORNING OF __, PAGES 1 THROUGH 101

 9        REPORTER'S TRANSCRIPT OF JURY TRIAL, MORNING SESSION

10
              BEFORE THE HONORABLE AMOS L. MAZZANT, III
11           UNITED STATES DISTRICT JUDGE, AND A JURY

12     ------------------------------------------------------------

13

14     APPEARANCES:

15     FOR THE PLAINTIFFS:

16                     DERON R. DACUS
                       THE DACUS FIRM
17                     821 ESE LOOP 323, SUITE 430
                       TYLER, TEXAS  75701
18
                       ROBERT F. KRAMER
19                     MARGARET ELIZABETH DAY
                       DAVID L. ALBERTI
20                     SAL LIM
                       RUSSELL STEVEN TONKOVICH
21                     MARC C. BELLOLI
                       SVEN RAZ
22                     ANDREW GRANT HAMILL
                       ROBERT Y. XIE
23                     FEINBERG DAY KRAMER ALBERTI LIM
                       TONKOVICH & BELLOLI
24                     577 AIRPORT BOULEVARD, SUITE 250
                       BIRLINGAME, CALIFORNIA  94010
25
```

```
 1   FOR THE DEFENDANTS:

 2                       HARRY LEE GILLAM, JR.
                         ANDREW THOMPSON "TOM" GORHAM
 3                       GILLAM & SMITH
                         303 SOUTH WASHINGTON AVENUE
 4                       MARSHALL, TEXAS  75670

 5                       L. REX SEARS
                         ALEXIS K. JUERGENS
 6                       MASCHOFF BRENNAN - SALT LAKE CITY
                         111 SOUTH MAIN STREET, SUITE 600
 7                       SALT LAKE CITY, UTAH  84111

 8                       BARRY KENNETH SHELTON
                         BRADLEY DALTON COBURN
 9                       SHELTON COBURN LLP
                         311 RR 620 SOUTH, SUITE 205
10                       AUSTIN, TEXAS  78734-4775

11

12   COURT REPORTER:   CHRISTINA L. BICKHAM, CRR, RDR
                       FEDERAL OFFICIAL REPORTER
13                     101 EAST PECAN
                       SHERMAN, TEXAS  75090

14

15

16

17        PROCEEDINGS RECORDED USING MECHANICAL STENOGRAPHY;
          TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 05:38:50 | 1 | me. |
| 05:38:50 | 2 | THE COURT:  Okay.  That's fine.  And I -- my staff |
| 05:38:52 | 3 | just gave me -- do you want to know the totals of what you |
| 05:38:55 | 4 | have left? |
| 05:38:56 | 5 | MR. DACUS:  Please. |
| 05:38:56 | 6 | MR. SEARS:  Please. |
| 05:38:57 | 7 | THE COURT:  Plaintiff has 3 hours 49 minutes, and |
| 05:38:59 | 8 | the defense has 4 hours 8 minutes. |
| 05:39:03 | 9 | MR. SEARS:  4:08? |
| 05:39:04 | 10 | THE COURT:  4:08, yes. |
| 05:39:05 | 11 | MR. SEARS:  Thank you. |
| 05:39:06 | 12 | THE COURT:  No, that's fine.  So I'm going to have |
| 05:39:08 | 13 | my lawyer, when we recess today, to give you copies of the |
| 05:39:12 | 14 | charge and everything.  So I think we'll plan on just |
| 05:39:15 | 15 | meeting after we finish tomorrow, in chambers, to have an |
| 05:39:19 | 16 | informal charge conference tomorrow evening, after we |
| 05:39:22 | 17 | finish, just so that we're ready to go on -- and I know |
| 05:39:25 | 18 | there were some disputes among the parties.  I made my |
| 05:39:27 | 19 | calls on those.  You can certainly -- we can talk about |
| 05:39:30 | 20 | those tomorrow, whether you agree or disagree with those |
| 05:39:33 | 21 | calls that I've made.  But we'll do that informally after |
| 05:39:36 | 22 | we're done tomorrow. |
| 05:39:36 | 23 | Okay.  Anything else, then? |
| 05:39:38 | 24 | MR. DACUS:  No, your Honor. |
| 05:39:39 | 25 | THE COURT:  Okay.  Okay.  We will be in recess, |

03:01:24   1   before we recess?

03:01:26   2           MR. DACUS:  No, your Honor.

03:01:26   3           THE COURT:  Defense?

03:01:27   4           MR. SHELTON:  No, your Honor.

03:01:28   5           THE COURT:  Do y'all want the totals that are

03:01:31   6   left?

03:01:31   7           MR. DACUS:  That would be great.

03:01:32   8           THE COURT:  Okay.  Plaintiff has 2 hours and 20

03:01:35   9   minutes left.  Defense has 1 hour and 19 minutes.

03:01:39   10          MR. SHELTON:  Thank you, your Honor.

03:01:40   11          THE COURT:  Okay.  See you back in 15.

03:01:42   12          (Recess, 3:01 p.m. to 3:19 p.m.)

           13          (Open court, all parties present, jury not

03:19:06   14   present.)

03:19:06   15          MR. SHELTON:  Your Honor, we have an issue, first.

03:19:12   16          THE COURT:  Hold on a second.

03:19:12   17          Yes.

03:19:12   18          MR. SHELTON:  Your Honor, the last exhibit that

03:19:14   19   was used -- it's not even an exhibit, hence the problem.  I

03:19:17   20   didn't -- I didn't notice or I didn't hear that there

03:19:19   21   wasn't an exhibit number, and I wasn't given this exhibit.

03:19:23   22          And so when your Honor started the break, I went

03:19:28   23   to Mr. Alberti and I said, you know, what is this?  Because

03:19:33   24   we looked at the transcript, and there was no exhibit

           25   number.

| 05:32:38 | 1 | agree that JMOLs can be made orally? |
| 05:32:42 | 2 | MR. DACUS:  We have no objection to that, your |
| 05:32:43 | 3 | Honor. |
| 05:32:45 | 4 | MR. SEARS:  Okay.  Great.  Thank you.  Thank you. |
| 05:32:47 | 5 | I had spoken with Mr. Raz earlier.  He -- |
| 05:32:50 | 6 | THE COURT:  That's fine.  I've done it both ways. |
| 05:32:52 | 7 | That's not a problem. |
| 05:32:53 | 8 | And then do we have a couple attorneys who are |
| 05:32:55 | 9 | going to handle the charge conference and -- let me ask you |
| 05:32:59 | 10 | to -- this is your last witness, I presume? |
| 05:33:02 | 11 | MR. SEARS:  Correct. |
| 05:33:02 | 12 | THE COURT:  Okay.  And then is there anybody in |
| 05:33:05 | 13 | rebuttal? |
| 05:33:05 | 14 | MR. DACUS:  Yes, your Honor.  We've probably got |
| 05:33:07 | 15 | an hour and 15 minutes of rebuttal, hour -- whatever we |
| 05:33:10 | 16 | have left, that's what we have. |
| 05:33:11 | 17 | THE COURT:  You have the time, so -- |
| 05:33:13 | 18 | MR. DACUS:  Right. |
| 05:33:13 | 19 | THE COURT:  Let me get -- I know plaintiff has 11 |
| 05:33:16 | 20 | minutes left.  Defense has an hour 30 -- I mean, plaintiff |
| 05:33:22 | 21 | has an hour 30, and defense has 11 minutes. |
| 05:33:27 | 22 | MR. SEARS:  Dang.  I was hoping we -- |
| 05:33:29 | 23 | THE COURT:  Sorry.  I said that wrong the first |
| 05:33:31 | 24 | time.  Sorry. |
| 05:33:32 | 25 | Okay.  Well, if you need a break, if you want to |

05:33:34   1   use the facilities or whatever, and then my lawyer can

05:33:37   2   bring you back here in like five minutes, and then we'll do

05:33:42   3   that in chambers.

           4           (Proceedings adjourned, 5:34 p.m.)

           5   COURT REPORTER'S CERTIFICATION

           6           I HEREBY CERTIFY THAT ON THIS DATE, MARCH 4,
               2021, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD
           7   OF PROCEEDINGS.

           8           /s/_____
                       CHRISTINA L. BICKHAM, CRR, RDR
           9

          10           --------------------------------

          11

          12                      INDEX

          13

          14                                              PAGE

          15   CONTINUED DEPOSITION TESTIMONY OF ERAN BACHAR    988

          16   DIRECT EXAMINATION OF MATTHEW SHOEMAKE          1004

          17   CROSS-EXAMINATION OF MATTHEW SHOEMAKE           1060

          18   REDIRECT EXAMINATION OF MATTHEW SHOEMAKE        1099

          19   QUESTIONS FROM THE JURY                         1101

          20   DIRECT EXAMINATION OF DANIEL VAN DER WEIDE      1102

          21   CROSS-EXAMINATION OF DANIEL VAN DER WEIDE       1129

          22   QUESTIONS FROM THE JURY                         1135

          23   DIRECT EXAMINATION OF CLARKE NELSON             1137

          24   CROSS-EXAMINATION OF CLARKE NELSON              1161

          25   COURT REPORTER'S CERTIFICATION                  1197

 1   concerned that we're about to hear that hardware is

 2   required for the claim.  That's where the questions were

 3   going this morning, in a very skilled and roundabout way.

 4   That's where this argument lies.  And the Court has said

 5   very clearly that it's not.

 6           So I just raise it because I don't want to have to

 7   stand up in the middle of a closing.

 8           THE COURT:  I understand.

 9           And I stand by the Court's ruling, and I'm going

10   to overrule your motion.

11           MR. COBURN:  Thank you, your Honor.

12           THE COURT:  Anything else?

13           MR. COBURN:  That's all I have, your Honor.

14           THE COURT:  Okay.  Anything from the plaintiffs?

15           MR. BELLOLI:  Yes, your Honor.  First, the 50(a)

16   on invalidity under 102 and 103.

17           The defense expert didn't point to a single

18   limitation in any asserted claim and point to where any

19   limitation may be found in the prior art references.

20   That's insufficient.

21           Generalized and conclusory statements about prior

22   art and invalidity are not sufficient to survive a

23   Rule 50(a) motion.  The *Fresenius* case is directly on point

24   here.  That's 582 F.3d 1288 at 1300.  That's the Federal

25   Circuit in 2009.

1          There's tons of cases on point, as we've provided

2    them to chambers.

3          But there was nothing.  There was really no

4    invalidity case put on here as to 102 and 103.  And the

5    *Frensenius* case says, you know, if an expert fails to

6    identify where one limitation is missing in the prior art.

7    So they do all the limitations but one and don't point to

8    that, the opinion is out; the art is out.

9          And, here, we have a complete failure on any

10   limitation to describe where they are in the prior art and

11   link it in any way.  No claim was pointed to.

12         And just another point in the case law.  There is

13   a lot of case law saying expert testimony is required for

14   these matters of infringement and invalidity when they are

15   of a technical nature like this.  And while there is expert

16   testimony -- not on these points, so they can't just put

17   the two documents, the two prior references, before the

18   jury and say, look, we think they are invalid, that would

19   be improper.

20         So that's the motion as to 102 and 103.

21         As to 112, there was enablement and written

22   description.  Same issue.  Generalized and conclusory

23   testimony is not sufficient for both flavors of 112 that

24   they are proffering.

25         There is no specific reference in the transcript

 1    to any claim or claim limitation.  He just kind of says:  I

 2    don't think this concept has support.  But he doesn't link

 3    it to any asserted claim or claim limitation.

 4            And so, under the *WBIP* case, the *Streck* case, the

 5    *CytoLogix* case, the *Alcon* case, these four cases we

 6    submitted to chambers, both of these defenses should go out

 7    as well.

 8            One more reason to get rid of the enablement

 9    defense is that there is -- they never addressed the fact

10    that -- whether or not a person of ordinary skill in the

11    art could enable or, you know, use the invention without

12    undue experimentation.

13            And there's case law -- and, in fact, the *Alcon*

14    case, 745 F.3d 1180 -- I don't have the pinned cite, I'm

15    sorry -- Federal Circuit 2014, that says when you don't

16    address that issue JMOL is proper on enablement as well.

17            Sorry, a lot of concepts here this morning.

18            And, you know, finally, I think there may even be

19    an implicit admission by defendants on this because the

20    only case law they submitted was on written description,

21    not 102, 103, or enablement.

22            And the one case they cite, the *Synthes* case, is

23    not a 50(a) motion.  It's where a Court found that --

24    affirmatively found, made a finding, like on summary

25    judgment or posttrial briefing, that, you know, as a matter

 1    of law, the Court found that written description was

 2    lacking.  It's not sufficiency of evidence or argument case

 3    under Rule 50.

 4              And, again, we just think that it was way too

 5    general, way too conclusory; and, most importantly, just

 6    not directing the jury to any claim or claim limitation in

 7    making the argument.  So we think the whole invalidity case

 8    fails as a matter of law.

 9              THE COURT:  Thank you.

10              Response?

11              MR. SHELTON:  Thank you, your Honor.

12              I will freely admit that, as to Section 102, 103,

13    and validity, the examination was limited by our time

14    constraints.  And so I want to focus your Honor on the

15    Section 112 written description aspect of the invalidity

16    case.

17              And, there, I don't think there is any question

18    that Dr. van der Weide did provide detailed analysis.  And

19    it wasn't necessary, because of the nature of the written

20    description defense here, to go into the claims and go

21    element by element, because the issue there was -- and it

22    was clearly framed in each of the questions that were posed

23    to Dr. van der Weide -- was whether the asserted claims

24    were supported by the specification with regard to whether

25    the mobile device that's tested in the claims could be a

1    real mobile device.

2           So that was stated precisely as the predicate for

3    each of the questions.  And Dr. van der Weide -- so there's

4    11 pages in the trial transcript, your Honor, starting on

5    page 1120 yesterday.  And in each case, Dr. van der Weide

6    went through the four passages in the patents, and that

7    same language is in each of the patents that are asserted,

8    and Figures 1A and Figure 7.  And Dr. van der Weide

9    explained that each passage that the parties agreed

10   constitutes the sole disclosure of testing on a physical

11   mobile device.

12          And Dr. van der Weide presented opinion testimony,

13   consistent with his expert report, that the written

14   description requirement was not met.  So I can't imagine

15   what more he could have presented to the jury to allow a

16   finding that the written description requirement has not

17   been met here.

18          THE COURT:  And let me ask:  Are you conceding

19   anticipation and obviousness?

20          MR. SHELTON:  Yes, your Honor.

21          THE COURT:  Okay.  So based on your conceding

22   that, I will grant the motion as to those two.

23          And then do you want to respond to the written

24   description?

25          MR. BELLOLI:  Are you conceding enablement as

1  well?

2          MR. SHELTON:  We'll concede enablement.

3          MR. BELLOLI:  Okay.  So with written description

4  again, it's just naked testimony about sections of the

5  specification and figures.  It's not tied to any claim.

6          He's not asked, you know, is this claim limitation

7  lacking support.  And it's just a couple of pages of the

8  trial transcript.  It's page 1120 to -- 1120 for both

9  enablement and written description, so that's not all of

10  it.

11          But, again, there is just no linking, and it's

12  conclusory testimony.  It's just:  Does this

13  specification -- does this cite support your opinion,

14  essentially?  Yes.

15          Does this figure support your opinion?  Yes.

16          And then it's just conclusory.  There is no

17  explanation.  You have to explain why the written

18  description is lacking.

19          And, again, under the cases we submitted, such

20  high-level generalized conclusory testimony is just not

21  sufficient.

22          But I really think that where you can cut it off

23  is it is just never linked to any claim in this case.  He

24  didn't give an opinion that this claim, this element,

25  lacking written description.

1          And I would really just submit that there is nine

2    pages.  They are a pretty quick read.  And if the Court

3    sees those nine pages, it will agree that this was cursory

4    and not sufficient and not pointing to any claim or claim

5    limitation.

6          MR. SHELTON:  Your Honor, I would make the same

7    suggestion to the Court, that your Honor read the nine

8    pages.  And you will see that for each of the four

9    passages, Dr. van der Weide wasn't just asked, does this

10   support your opinion, which would be cursory and

11   conclusory.

12         But, instead, he was asked, what would this teach

13   a person of ordinary skill in the art and then is that

14   sufficient, in your opinion, to show that the inventor

15   possessed the full scope of the invention, which this Court

16   has decreed involves testing on both emulated mobile

17   devices and real mobile devices.

18         So if your Honor took, you know, a moment to read

19   this testimony, I think you will see -- and, of course, you

20   were here -- that that was more than ample support for the

21   jury to find that the written description requirement has

22   not been met for any of the six claims.

23         MR. BELLOLI:  Okay.  Last thing, your Honor, are

24   just the slides that they showed.

25         Okay.  All the slide says, was the inventor in

 1  possession of the claimed invention?  And it points to,

 2  like, a figure.  It just points to figures.  They never

 3  link it to any claim.  They never link it to any claim in

 4  any way, shape, or form or specific claim limitation.

 5           You have to have a claim limitation that fails the

 6  written description requirement of 112, and they just don't

 7  do it.

 8           I don't know -- really, other than to formally

 9  brief this, I don't know how to put it out -- or to have

10  the Court review the testimony and make a determination if

11  it's too general, too conclusory, too cursory, and not

12  linked to any claim or claim limitation.  I think that's --

13           MR. SHELTON:  Your Honor, may I read one question?

14           THE COURT:  Go ahead.

15           MR. SHELTON:  And this is from the -- this is the

16  first element -- I'm sorry -- the first passage.

17           So I asked Dr. van der Weide --

18           MR. BELLOLI:  What page again?

19           MR. SHELTON:  I haven't said.

20           Trial transcript 1121, starting on line 18.  And I

21  asked Dr. van der Weide:  "And what I'm going to do, sir,

22  is I'm going to take you through each of those; and I'm

23  going to ask you if, in your opinion, the passage will

24  demonstrate to a person of ordinary skill in the art at the

25  time of the invention that the inventor, Mr. Poulin,

1    actually invented the concept of meeting all the claim

2    limitations that are asserted in this case but using a real

3    mobile device as opposed to an emulator."

4            I mean, that sets the full necessary predicate.

5    It's not conclusory, and it --

6            And then, in his answer --

7            THE COURT:  Well, let me ask you:  I mean, how

8    does that meet clear and convincing evidence?  You have to

9    show that by clear and convincing evidence.  And so how

10   does that one question get you there?

11           MR. SHELTON:  How does -- I'm sorry.  What?

12           THE COURT:  I mean, you have to show by clear and

13   convincing evidence.  And so, those nine pages and that

14   question and answer you just gave me, how does that get you

15   there?

16           MR. SHELTON:  I just read the question, sir.  I

17   didn't read the answer.

18           THE COURT:  Well, I understand.  But, I mean...

19           MR. SHELTON:  Well, when you're talking about

20   written description, it supports that something is missing.

21   And the parties agree that there is only four passages.  He

22   went through all four.

23           And his opinion was that it's not sufficient to

24   show.

25           And he used Figure 1A and showed, for example,

 1    that the authoring environment -- the authoring tool has a

 2    one-way arrow to the mobile device.  It's not two-way.

 3             And there's -- I mean, Dr. Malek admitted on

 4    cross-examination on Tuesday that every embodiment, every

 5    embodiment of all three patents, deals only with the

 6    emulator.  That's their expert.  He admitted that.

 7             So there is no embodiment that teaches testing on

 8    a real mobile device that would meet the claim limitations,

 9    and the only four passages that the parties agree have

10    anything to do with a real mobile device have been shown by

11    a qualified expert to not have anything to do with meeting

12    the limitations of the claims.

13             I can't imagine what more could have been done.

14    And I think, your Honor, that it more than meets the clear

15    and convincing evidence standard.

16             MR. BELLOLI:  I think the question he asked and

17    read, your Honor, as his best evidence of a question just

18    says, did Mr. Poulin actually -- I mean, he's asking him

19    basically did Mr. Poulin actually invent the concept of

20    meeting all claim limitations that are asserted in this

21    case.

22             You know, might as well just put the patent in

23    front of the jury and say, hey, you figure out if a written

24    description is here.

25             THE COURT:  Okay.  Well, of course, the Court

 1    hates pulling things away from the jury.  But in this
 2    situation I just don't see how the defense gets there,
 3    because the written description requires potential evidence
 4    that's not conclusory.  And that's the problem, is the
 5    evidence you have is conclusory.
 6              And, of course, in the case that's been cited to
 7    the Court, in *WBIP* 829 F.3d 1317, the Federal Circuit
 8    affirmed the District Court's denial of JMOL that the
 9    asserted claims lack written description.
10              There, the written description defense went to the
11    jury, which found for the plaintiff.  Defense appealed and
12    argued the JMOL should have been granted.
13              While this is not in the same procedural stance,
14    because the Court is faced with granting plaintiffs' JMOL
15    as opposed to denying defendants' on invalidity, the
16    Federal Circuit discussed the expert's testimony and
17    explained why it was legally insufficient.
18              In *WBIP* the expert answered three questions on
19    written description.  The attorney was doing more
20    testifying than the expert, as the attorney asked long,
21    leading questions; and the expert replied succinctly and
22    referred back to the slides.
23              The Federal Circuit said that the defendant never
24    presented the jury with the detailed argument required to
25    establish invalidity by written description.

1          The Federal Circuit called this general conclusory

2    testimony that does not suffice as substantial evidence of

3    invalidity.  This evidence does not rise to the level of

4    clear and convincing evidence, is a quote from the Federal

5    Circuit.

6          Similarly, in this case, the defendants' expert

7    addressed written description in, really, a quick fashion.

8    While, in this case, it's more than three questions, it was

9    approximately just five minutes of his testimony, total.

10         The attorney on direct examination asked long,

11   leading questions, designed to speed things up.  And the

12   defendants' expert referred back to his slides so much that

13   the transcript does not clearly state his opinions.  This

14   is the type of general, conclusory testimony that is

15   legally insufficient to demonstrate invalidity.

16         And I looked at the case y'all had cited, and I've

17   looked at the testimony as well.  The case you cited -- is

18   it -- I'm not -- it's S-Y-N-T-H-E-S.  It was very

19   different, and it had a lot more detailed testimony than we

20   have in this case.

21         So I am going to grant the plaintiffs' motion and

22   exclude the written description defense from going to the

23   jury.

24         Anything else?

25         MR. BELLOLI:  We do have kind of a four-part 50(a)

1    way, I'll come down and talk to you.

2             And we'll be in recess.  Thank you.

3             (Proceedings concluded, 3:29 p.m.)

4    COURT REPORTER'S CERTIFICATION

5             I HEREBY CERTIFY THAT ON THIS DATE, MARCH 5,

6    2021, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD

7    OF PROCEEDINGS.

8

9                     /s/
                  CHRISTINA L. BICKHAM, CRR, RDR
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25