UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WAPP TECH LIMITED PARTNERSHIP AND WAPP TECH CORP., <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. | Case No. 4:21-cv-00671-ALM |

**WELLS FARGO'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

Wapp accuses Wells Fargo's use of specific mobile-application-testing tools that Wells Fargo uses alongside other non-infringing testing tools.  While Wapp accuses only the **use** of these tools, Wapp argues documents regarding Wells Fargo's customers' use of specific features in Wells Fargo's applications are relevant to reasonable-royalty patent damages because "the benefits Wells Fargo derives from its mobile applications are the . . . benefits of . . . infringement."  Mot. at 1.  Wapp mischaracterizes its invention's benefits to pursue royalties that would far exceed any incremental value the invention provides and bases its damages on the legally untenable premise it is entitled to damages akin to restitution.

Patent-infringement damages should put a patentee in the position it would have occupied absent infringement,[1] not a better position.[2]  This principle informs damages calculations and what discovery is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Thus, the Court should deny Wapp's motion for at least two reasons.

First, requiring Wells Fargo to produce feature-level information would be disproportionate to the needs of this case.  On one side of the scale, the feature-usage information is, as explained below, irrelevant and will add nothing to Wapp's case ***beyond the information Wells Fargo will produce about customers' overall use of the applications***.  On the other side, gathering feature-level information will substantially burden Wells Fargo, which will have to engage with potentially dozens of teams within the Bank and potentially hundreds of employees to identify, locate, and retrieve the requested information—if it even exists—to investigate adequately all the features in the applications.  Thus, although the requested data is irrelevant, the

---

[1] *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505 (1964).
[2] Even if restitution were appropriate, Wells Fargo would not concede that the benefits of having a mobile application are benefits of the alleged infringment.

1

burden of producing the data is too high for the Court to grant Wapp's motion—*even assuming minimal relevance*.

Second, Wapp cannot show the feature-level documents are relevant to a reasonable royalty. Any reasonable-royalty calculation depends on the difference between the cost of using the allegedly infringing tools and another means of testing—not on the difference between having or not having a mobile application. Wells Fargo would offer its customers a mobile-banking application with or without using the allegedly infringing tools. The tools' providers have stated these tools are "preliminary"; "limited test platform[s]"; that "it is essential that you run and test it on connected devices"; and that "it's important that you always test your app on a real device." Ex. A, Ex. B. Moreover, Wells Fargo had a mobile-banking application more than two years before Wapp's earliest patent issued, and Wells Fargo can, and does, test its applications via non-infringing means. Wapp seeks information about the applications' individual features in pursuit of a legally incorrect measure of damages.

Wapp would argue its inventions cover any mobile application offered on iOS or Android. Applying Wapp's arguments to such applications would require production of information far afield from the invention. For example, if the application were an amusement park mobile app, Wapp would argue for production of not only the number of users, but also how many riders of Space Mountain used the app to purchase souvenir photos or made dinner reservations at Cinderella's Royal Table. Such data has no relevance to any legitimate measure of damages.

**BACKGROUND**

I. **Wapp bases its claims on Wells Fargo's use of certain testing tools, not the mobile applications.**

Wapp accuses Wells Fargo's use of third-party mobile-application testing tools. Wapp's patents cover one way of testing a mobile application's code: **simulating** characteristics of a

mobile device and/or network and testing an application in the simulation. Other ways of testing mobile applications exist that Wapp has not accused of infringement.

**II.     Wells Fargo has produced comparable-license information regarding what Wells Fargo pays vendors of non-infringing mobile-application testing products.**

The evidence in this case will show Wells Fargo employees can and do test mobile applications on physical devices rather than through simulation. Wells Fargo has disclosed such means as non-infringing alternatives and produced comparable-license information related thereto. Also, Wells Fargo will produce information showing how much it could pay to purchase physical mobile devices for every application tester.

**III.    Wells Fargo will produce information about the extent to which its customers use its mobile applications, but Wapp filed this motion without evaluating that information.**

Wells Fargo is producing metrics about usage and popularity of Wells Fargo's applications. Rather than waiting to see if such metrics provide sufficient data for Wapp to formulate its damages model, Wapp filed this motion to compel.[3]

**IV.    Producing the feature-specific information Wapp requests would substantially burden Wells Fargo.**

Wells Fargo's mobile applications have numerous features, and the requested information, if it exists, spans potentially dozens of teams of Wells Fargo employees. The necessary interviews would be in addition to the nearly 130 employees already interviewed for the overall mobile applications. To provide the requested information, Wells Fargo would have to engage with potentially more than one hundred additional individuals on these teams to locate the information.

**V.     Wells Fargo has no documents in two of Wapp's categories.**

---

[3] Wapp relies on a declaration (unsolicited by the Court's orders) from its damages expert to attempt to establish the requested information's relevance. Mot. at 5. The expert is not qualified to opine about the suitability of non-infringing alternatives and other comparable products Wells Fargo has identified. His statements are therefore irrelevant to the present motion. Wells Fargo reserves the right to challenge Wapp's experts per the Court's orders.

3

Wapp requested: (1) documents showing the extent to which customers use specific, individual features within Wells Fargo's mobile applications; (2) data showing the difference between profits generated from mobile-banking customers and non-mobile-banking customers; and (3) documents that discuss the correlation and causation between mobile banking usage and the reduction of physical branches. Wells Fargo has no documents in Wapp's second or third categories, so the Court need only consider the first category.[4]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." When a party moves to compel under Rule 37(a)(1), "[t]he moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Vine v. PLS Fin. Servs.*, 2020 U.S. Dist. LEXIS 12346, at *7 (E.D. Tex. Jan. 24, 2020) (Mazzant, J.).

## ARGUMENT

The Court should deny Wapp's motion to compel. The only issue is whether Wapp has established that information regarding usage of individual features is relevant to a legitimate measure of damages and proportional to the needs of the case. Wapp has shown neither.

I. **Information about the use of individual features is irrelevant to patent-infringement damages in this case.**

   a. **Wapp improperly focuses on the attenuated benefits of allegedly infringing activity to justify the discovery it requests.**

---

[4] Even if Wells Fargo had documents in the second and third categories, Wapp's motion would fail as to those categories for the same reasons the motion fails as to the first category. Those reasons are below.

4

Wapp can seek only reasonable-royalty damages, so the requested information must be relevant to calculating that royalty.[5] Wapp errs by conflating a reasonable royalty with restitution—a "set of remedies associated with that body of law, in which the measure of recovery is usually based not on the plaintiff's loss, but on the defendant's gain." Black's Law Dictionary, *Restitution* (11th ed. 2019). Wapp's request stems from its belief that "the benefits Wells Fargo derives from its mobile applications are the resulting benefit of . . . infringement."

But harm to the patentee, not benefit derived from infringement, drives patent damages. "Upon finding for the claimant the court shall award the claimant damages adequate to ***compensate*** for the infringement." 35 U.S.C. § 284 (emphasis added). The inquiry "is the difference between [the claimant's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *Yale Lock Mfg. Co. v. Sargent*, 117 U.S. 536, 552 (1886). A patent-infringement plaintiff has not been entitled to an infringer's profits since 1946, when Congress amended Section 284. *Aro Mfg. Co.* 377 U.S. at 505. "The purpose of the change . . . was precisely to eliminate the recovery of profits as such and allow recovery of damages only." *Id*. "[D]amages" are "what the owner of the patent loses by . . . infringement." *Id*. Thus, even if feature-level usage information were relevant to benefits derived from alleged infringement, that information will provide no evidence about what would put Wapp in the position it would have occupied absent the alleged infringement.

      **b.**      **The requested information is irrelevant to calculating a reasonable royalty.**

---

[5] The other measure of patent damages is lost profits, but Wapp cannot seek lost profits because it has no operations. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017).

Wapp cannot tie the data it seeks to any reasonable-royalty calculation that focuses on returning Wapp to the position it would have occupied absent the alleged infringement. One way to evaluate the financial position Wapp would have occupied absent the alleged infringement is to assume infringement and ask what royalty Wells Fargo would have agreed to pay Wapp to use the allegedly infringing testing tools. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

Here, ample evidence exists regarding the amount Wells Fargo would have agreed to pay Wapp for the right to use the allegedly infringing testing tools, and that evidence (soon to be in Wapp's possession) renders feature-usage information irrelevant. Wells Fargo has identified non-infringing testing means involving physical devices and has produced documents evincing what it has paid vendors for the right to use non-infringing testing platforms. One can also calculate—based on information in documents Wells Fargo has and will produce and in testimony from Wells Fargo's employees—what Wells Fargo could pay to purchase and periodically replace physical devices on which to test the mobile applications. Because this wealth of information about the value of application-testing products exists, Wells Fargo and Wapp's hypothetical negotiation would not hypothetically devolve into a discussion of attenuated benefits at most tangentially related to Wells Fargo's mobile-application features. Feature-specific information is therefore irrelevant to the hypothetical-negotiation.

The feature-specific usage information is irrelevant also to the analytical approach, under which courts analyze the difference between the profits a defendant earned through infringing activity and the profits a defendant would have earned absent infringing activity. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986). Assuming for the sake of argument that Wells Fargo uses the third-party tools to perform some infringing testing, the only relevant difference in

6

profits would be the difference between what Wells Fargo pays for the allegedly infringing tools and what it would pay for non-infringing tools. Because Wells Fargo has different methods of testing mobile applications, Wells Fargo can test its applications and make them available to customers without using the allegedly infringing tools. Customers' use of individual mobile-application features would remain constant regardless of infringement. Thus, the only relevant information to the analytical approach is what non-infringing testing tools cost relative to the allegedly infringing tools.

Nor is feature-usage information relevant to Wapp's cost-savings approach. Wapp claims Wells Fargo's mobile applications save Wells Fargo money by reducing the need for ATM or human processing of transactions. But because neither the individual features nor the applications infringe, any cost savings derived from the applications or their features is irrelevant. The only relevant cost savings is the difference in the cost between allegedly infringing tools and non-infringing tools. Thus, use of features in Wells Fargo's mobile applications is irrelevant to cost savings.

  **c.**  **Wapp provides no basis for concluding any benefits derived from a product developed using an allegedly infringing testing tool are always relevant to damages in a patent-infringement case based only on the use of the tool.**

Wapp's attempts to bridge the gap between accusing an application testing tool and seeking benefits derived from the application as damages fail. Although Wapp's motion pays lip service to five *Georgia-Pacific* factors, by baldly asserting that feature-specific usage information is relevant to the factors, Wapp resorts to the broad generalization that, "[i]t is common . . . to seek discovery into a defendant's products that are made through infringing activities, even if the products themselves do not infringe." Mot. at 6. Wapp offers no support for the sweeping implication that such discovery is always proper. Rather, the opinions Wapp discusses show at

7

most that cases **could exist** in which "discovery into a defendant's products […] made through infringing activities" **could be** relevant, not that such discovery is **always** relevant.

*Carnegie Mellon v. Marvell Technology Group, Ltd.* is distinguishable. 890 F. Supp. 2d 602, 610 (W.D. Pa. 2012). Wapp recites the following quote from *Carnegie Mellon*, "One of the simplest ways to determine the value of an infringing use of a patented method during research is to ascertain how many sales were made based on that infringing use." *Id.* at 610. But on its face, the foregoing quotation states only that "ascertaining how many sales were made based on [an] infringing use" is **one available approach**, not that the approach is always proper. *Id.* Here, there is another, simpler approach—analyzing what Wells Fargo pays for non-infringing testing and development tools, as opposed to attenuated benefits from a non-infringing mobile application anyone can download and use for free.

*Carnegie Mellon* approved Wapp's preferred approach in circumstances nothing like those here. *Carnegie Mellon* involved a patented simulation program a defendant used to manufacture computer chips to sell to its customers. *Id.* at 604–05, 609. But unlike this case, "any profit that [the defendant] derive[d] from the sale of infringing chips [was] directly due to its infringements [*sic*]" because the defendant "conceded that its infringing use [was] the but-for cause of [its] sales." *Id.* at 610. Here, assuming infringement for the sake of argument, infringement **would not** be the but-for cause of any mobile applications' existence. Wells Fargo can and does test its mobile applications in non-infringing ways such that the applications would exist, and customers would use them, regardless of infringement. Indeed, Wells Fargo developed, tested, and offered a mobile banking application more than two years before Wapp's first patent was granted. *Carnegie Mellon* is therefore inapposite.

Wapp also overreads *Infernal Tech, LLC v. Activision Blizzard, Inc.*, which supports Wells Fargo's position. In *Infernal Tech*, the plaintiff accused the defendant of infringing patents directed to the "handling [of] lighting and shadowing in computer graphics." 2021 U.S. Dist. LEXIS 183391 at *3 (N.D. Tex. Sept. 16, 2021) (Lynn, C.J.). The plaintiff's damages expert employed a reasonable-royalty damages model based on sales of computer games incorporating the infringing technology, and the plaintiff relied on *Carnegie Mellon* "for the proposition that sales of a product may be an appropriate measure of damages resulting from internal use of a patented method." *Id.* at 35–36. However, although Judge Lynn agreed that "**in some instances**, it may be appropriate to base damages for internal use of a claimed method on product sales," doing so was improper in *Infernal Tech* because unlike in *Carnegie Mellon*, the plaintiff demonstrated no connection existed between the internal method and the sales. *Id.* at 36–37 (emphasis added). Thus, even though *Infernal Tech* evaluated the admissibility of expert testimony, it shows that sales of a product developed using allegedly infringing internal tools are relevant only if the plaintiff can demonstrate a sufficient connection between the allegedly infringing tools and the sales. Because Wapp has not attempted to connect any use of the allegedly infringing tools to use of specific features within the applications, Wapp has not carried its burden.

II. **Requiring Wells Fargo to produce information about specific features within Wells Fargo's mobile applications would be disproportionate to the needs of this case.**

Requiring Wells Fargo to produce feature-level documents must be "proportional to the needs of the case, considering . . . [among other factors] the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, producing the feature-usage documents would be disproportionate to the needs of the case because, even assuming the documents Wapp seeks are minimally relevant, producing the documents would substantially burden Wells Fargo.

9

First, the feature-level data must be relevant to a reasonable-royalty hypothetical negotiation. But given the wealth of available information discussed above regarding what Wells Fargo has paid for non-infringing testing products and what Wells Fargo could pay to purchase physical devices for its application testers, use of specific features within the applications would play a miniscule role in any hypothetical negotiation. Thus, in a hypothetical negotiation, the feature-level usage data would be irrelevant.

Second, the feature-usage documents are unimportant to resolving the issues in this case. Wapp wants information about the popularity of Wells Fargo's mobile applications. Wells Fargo has agreed to produce metrics answering that question by showing customers' use of the applications generally—as opposed to use of irrelevant features. The feature-level documents will add nothing to Wapp's case beyond the metrics Wells Fargo has agreed to produce.

On the other hand, producing the feature-level data would expand the scope of discovery exponentially. To provide the feature-level data, Wells Fargo would have to communicate with potentially dozens of teams per feature to find persons able to locate and harvest the information, review the information for production, add the persons to its disclosures, and prepare such persons for depositions. Ultimately, because the feature-specific information has little, if any, relevance and will add little to nothing to Wapp's case beyond the data in documents Wells Fargo will produce, ordering Wells Fargo to produce the feature-level usage documents is disproportionate to the needs of this case.

## CONCLUSION

For the foregoing reasons, the Court should deny Wapp's motion and grant Wells Fargo any other relief to which it may be entitled.

| | |
|---|---|
| Dated: June 21, 2022 | Respectfully submitted,<br><br>/s/ *Thomas M. Melsheimer*<br>Thomas M. Melsheimer<br>Texas State Bar No. 13922550<br>TMelsheimer@winston.com<br>Katrina G. Eash<br>Texas State Bar No. 24074636<br>KEash@winston.com<br>William G. Fox<br>Texas State Bar No. 24101766<br>WFox@winston.com<br>Steven R. Laxton<br>Texas State Bar No. 24120639<br>SLaxton@winston.com<br>WINSTON & STRAWN LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, Texas 75201<br>Telephone: (214) 453-6500<br>Facsimile: (214) 453-6400<br><br>Elizabeth Danielle T. Williams<br>North Carolina State Bar No. 23283<br>DWilliams@winston.com<br>WINSTON & STRAWN LLP<br>300 South Tryon Street, 16th Floor<br>Charlotte, NC 28202<br>Telephone: (704) 350-7790<br>Facsimile: (704) 350-7800<br><br>**Attorneys for Defendant**<br>**WELLS FARGO BANK, N.A.** |

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically and will be served on all counsel of record via CM/ECF on June 21, 2022.

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
