# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| WAPP TECH LIMITED PARTNERSHIP and WAPP TECH CORP., <br>    *Plaintiff,* <br> v. <br> <br> WELLS FARGO BANK, N.A., <br>    *Defendant.* | § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No.  4:21-CV-00671 <br> Judge Mazzant |

## ORDER

Pending before the Court is Plaintiffs WAPP Tech Limited Partnership and WAPP Tech Corporation's ("WAPP") Motion to Compel (Dkt. #75). Having considered the motion and relevant pleadings, the Court finds it should be **GRANTED**.

WAPP has alleged Defendant Wells Fargo Bank, N.A. ("Wells Fargo") infringed five of WAPP's patents during the development and testing of its mobile banking application. On March 17, 2022, WAPP requested thirteen categories of damages-related documents. Wells Fargo objected.

On April 27, 2022, the Court held a teleconference regarding WAPP and Wells Fargo's dispute over three damages-related interrogatories. The Court noted the expansive nature of discovery practice in the Eastern District, and granted Wapp's request on all three interrogatories. The Court reiterated, "if it's related to the mobile applications, it should be produced." The Court also dealt with arguments regarding Wells Fargo's patent license with USAA. The Court ordered Wells Fargo to produce the license.

On June 14, 2022, WAPP moved for the Court to compel Wells Fargo to produce three categories of documents (Dkt. #75). Wells Fargo responded on June 21, 2022 (Dkt. #78). WAPP replied on June 24, 2022 (Dkt. #82).

1

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court's scheduling order requires that the parties produce, as part of their initial disclosure documents containing, information relevant to the claim or defense of any party. Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense[.]" E.D. Tex. Civ. R. 26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery

disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

WAPP requests the Court compel Wells Fargo to produce: (1) documents and data that pertain to the features of Wells Fargo's mobile banking application that is developed and tested through its allegedly infringing activities, and user transactions (*e.g.,* check deposits, transfers, balance inquiries, etc.) performed on the mobile banking application; (2) data showing the difference between Wells Fargo's profits generated from mobile banking customers versus customers not using mobile banking; and (3) documents that discuss the causation or correlation between mobile banking usage and the reduction of physical bank branches (Dkt. #75). Wells Fargo contends such information is irrelevant to WAPP's damages theory and producing the documents and information would be disproportionate to the needs of the case

In patent infringement cases, damages are calculated by determining a reasonable royalty. *See* 35 U.S.C. § 284 (providing that upon a finding of patent infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer"). A reasonable royalty is determined using the "the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'" *Summit 6, LLC v. Samsung Electronics Co., Ltd.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)).

Courts have applied the factors stated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.* in determining the amount of a reasonable royalty including the following:

(1) Royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;
(2) Rates paid by the licensee for the use of other patents comparable to the patent-in-suit;
(3) The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;
(4) The licensor's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;
(5) The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;
(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;
(7) The duration of the patent and the term of the license;
(8) The established profitability of the product made under the patent, its commercial success, and its current popularity;
(9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;
(10) The nature of the patented invention, character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;
(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;
(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;
(13) The portion of the realizable profit creditable to invention as distinguished from non-patented elements, manufacturing process, business risks, or significant features or improvements a by the infringer;
(14) The opinion testimony of qualified experts; and,
(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified by* 446 F.2d 295 (2d Cir. 1971), *cert. dismissed*, 404 U.S. 870 (1971).  The Court finds the requested categories of documents are relevant to at least some of these factors, and thus are discoverable.  Wells Fargo disagrees.

Wells Fargo contends WAPP "cannot tie the data it seeks to any reasonable-royalty calculation that focuses on returning WAPP to the position it would have occupied absent the alleged infringement" (Dkt. #78 at p. 6). Rather, Wells Fargo argues WAPP seeks information that pertains to restitution instead of reasonable royalty damages (Dkt. #78 at p. 5). Further, Wells Fargo argues feature-specific usage information is also irrelevant under the analytical approach, under which courts analyze the difference between the profits a defendant earned through infringing activity and the profits a defendant would have earned absent infringing activity (Dkt. #78 at p. 6 (citing *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986)). Finally, Wells Fargo argues WAPP fails to show that evidence of "any benefits derived from a product developed using an allegedly infringing testing too are always relevant to damages" (Dkt. #78 at p. 7).

First, the Court finds it difficult to imagine why WAPP would have to show the information it has requested is *always* relevant. Second, merely because the information requested may support a restitution award does not lead the Court to the conclusion that such information would be irrelevant to the reasonable royalty damages measure, nor that WAPP has conflated restitution with reasonable royalty theories of damages. Third, Wells Fargo's arguments concerning the appropriate damages theory are better saved for a later stage in the lawsuit. The mere possibility that a more appropriate damages theory does not foreclose WAPP's ability to request information that would support its proposed theory of damages.

Finally, the Court finds that the discovery request is not disproportionate to the needs of the case. As Wells Fargo points out, it is already in the process of producing metrics about usage and popularity of Wells Fargo's mobile banking applications (Dkt. #78 at p. 4). That said, Wells Fargo maintains it does not have documents in the latter two categories of requests. However, the

Court finds it difficult to imagine that an institution like Wells Fargo does not keep records of profits generated from mobile-banking customers versus non-mobile-banking customers, or the reduction in physical bank branches since the date of the alleged infringement. Thus, complying with WAPP's discovery request would not be disproportionate to the needs of the case.

It is therefore **ORDERED** that Plaintiffs' Motion to Compel (Dkt. #75) is hereby **GRANTED**.

It is further **ORDERED** that Defendant supplement its discovery responses no later than fourteen (14) days from the issuance of this Order.

**IT IS SO ORDERED.**

**SIGNED this 28th day of June, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE